# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

## Scranton *v.* Koehler.

*Municipal liens—Street paving—Front-foot rule.*

Where upon petition of property owners an ordinance of the city of Scranton provides for the paving of a certain street with improved paving, the cost thereof to be borne by the abutting property owners according to the front-foot rule, the peculiar conditions attending the work to be done in the case of a particular property may be regarded in fixing the amount of the assessment as to that property.

Argued Jan. 12, 1900. Appeal, No. 12, Jan. T., 1900, by plaintiff in a suit of City of Scranton against Henry T. Koehler, from judgment of C. P. Lackawanna Co., in favor of defendant on case stated. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ. Affirmed. Opinion by W. W. PORTER, J. W. D. PORTER, J., dissents.

Case stated. Before ARCHBALD, P. J.

The facts appear from the case stated as follows :

1. The city of Scranton is a city of the third class and governed by that legislation applicable thereto since April 4, 1877.

2. On the 2d day of August, 1896, the city of Scranton passed an ordinance providing for paving Mulberry street from Mifflin avenue to Prescott avenue. There is also attached a copy of the petition of the abutting property owners who asked

for the said paving of Mulberry street.  Defendant did not sign such petition.

3. The preliminary and final assessment upon the abutting owners along the line of said paving were made by the city engineer by a uniform assessment, upon the abutting feet front, without any allowance for the part paved with brick by the street railway companies, or for the street intersections.

4. Mulberry street from Mifflin to Prescott avenue is of a uniform width of thirty-four feet between curb lines and is partly occupied by street railway tracks.  The portion of the street occupied by the street railway companies, both between their rails and between their tracks, was paved by said companies with brick, at their own expense, this having been one of the conditions upon which they were allowed by the city to occupy the street.  On that portion of the street between Penn and Wyoming avenues the street railway company was also required to pave a space one foot wide on each side of its track outside the outer rails, and it did so pave at its own expense.

5. The defendant is an abutting owner on the line of said improvement, being the owner of a lot on the southerly corner of Mulberry street and Irving avenue, the portion abutting on Mulberry street having a frontage of eighty feet.  In front of this lot the street railway company has a double track road, occupying between its outer rails a space of fourteen and one fourth feet of the width of the center of the street along the entire frontage of defendant's lot; which space was paved with brick by said company at its own expense and with the approval of the city of Scranton, before the asphalt under this contract was laid.

6. The total number of square yards of asphalt pave laid under this contract, is 17,289.87, and the average cost per yard is $1.95, which includes all the expenses claimed by the city to be assessable to the abutting property owners.

7. The asphalt pave laid in front of defendant's lot by the city of Scranton under this contract is a strip nine feet and nine inches in width by eighty feet in length, and containing 86⅔ square yards.  The assessment laid on defendant's said lot for the paving done under said contract is $286, this result having been arrived at by taking the total cost of the asphalt pave laid under this contract and apportioning it equally on the total abut-

ting frontage per foot, without regard to the amount of pave actually laid in front of each lot. On portions of the street where no street railway track is laid there was laid by the city under this contract $151\frac{1}{9}$ square yards of asphalt opposite each eighty feet of frontage, but the assessment for the cost is the same as laid against the lot of defendant, to wit: $286.

8. If, under the facts herein set forth and the paper hereto attached, which are made a part of this case, the court shall be of opinion that the plaintiff is entitled to receive and collect from defendant the sum of $286 as an assessment for said pavement, then judgment with costs to be entered against defendant for that sum.

But if the court be of opinion that defendant is only liable for the amount of pavement actually laid by the city under this contract in front of his property, then judgment to be entered for plaintiff for $164.03 without costs.

If the court shall be of opinion that, in addition to the asphalt laid in front of defendant's lot, he is also liable for a proportionate share of the cost of paving the intersections paved under this contract, then judgment to be entered in favor of plaintiff for $185 without costs. Either party to have the right to appeal to the Supreme or Superior Court, and this case to be heard at November argument court, December 13, 1897.

The petition referred to in the case stated was by abutting property owners, and prayed for the paving of the street with asphalt, the cost of the said improvement to be assessed against the abutting owners according to the foot-front rule; that the assessment be made payable in ten annual instalments; that the space occupied by tracks and sidings of the street railway be assessed against said company and deducted from the assessment equally on both sides of said street.

The ordinance provided for the improvement as petitioned for, and the costs thereof to be assessed against the abutting owners according to the foot-front rule.

The court below filed the following opinion:

The exact point decided in Scranton v. Davidson, 3 Lack. Jur. 141, was that an assessment for paving made by the city engineer after notice is as conclusive under the statute as that

of a board of viewers.   We see no reason to doubt this, and if the same question were presented to us at this time we should be compelled to adhere to our former ruling.   The defense there attempted was, that taking the square yardage in front of the property at the price per yard fixed by the ordinance the assessment was greater than it ought to be, but for this we had simply the defendant's figures as against the assessment by the city engineer, and we held the latter under the circumstances to be conclusive.   It was at the same time recognized that if an inherent vice in the manner of making the assessment were shown, a different result might have to be reached, and that, as we understand it, is the contention here.   While there has been an assessment by the city engineer, the same as in Davidson's case, the basis on which it was made is set out in the case stated, and we are called upon to declare whether it is or is not a proper one.

The special facts of the case are these: The city ordinance by which the improvement is authorized provides for the pavement of Mulberry street, Scranton, from Mifflin to Prescott avenue, with sheet asphalt on a concrete base, the cost to be assessed on abutting properties according to the foot-front rule. The width of the street from curb to curb is thirty-four feet and the whole improvement is over a mile long.   Through several of the blocks a street railway track is laid which occupies the center of the street and in the block in which the defendant's property is located, and for three blocks contiguous, there is a double track which occupies a space of fourteen and one half feet wide, leaving but nine feet and nine inches of roadway outside of it on either side.   The street railway, as a condition to the occupancy of the street, is required by ordinance to pave the space taken by it, including that between its tracks where there are two of them, so that in front of the defendant's property and the properties adjoining it, the amount of pavement required to be laid is materially less than that in front of those where there is but a single track, or no railway at all. Without regard to this difference, however, the city engineer has figured the whole cost of the pavement, including street intersections, some thirteen in number, and dividing it by the total frontage of the properties abutting on the street, including both sides, has taken this as the amount per foot front with which

each property on the line of the whole improvement is to be assessed. It is claimed that this is invalid in two particulars: First, because the property owners are made to pay for the street intersections; and, second, because no attention is paid to the extent of the pavement in front of any particular property, but each is assessed on a pro rata basis according to its foot frontage, whether the pavement in front of it be more or less. Both these objections in a measure bring up the same question, and so far as they do they may be considered together; and that is, upon what exact basis is an assessment by the foot-front rule to be made?

In City of Wilkes-Barre v. McDermott, 6 Kulp, 345, the case of a municipal lien for paving, it is said by RICE, P. J.: "The defendant erroneously claims that under the claim as filed he is liable only for the actual cost of the pavement in front of his property. By the Act of April 5, 1867, P. L. 841, the assessment against the property is not simply for the actual cost incurred in front of his premises, but the pro rata cost and expense of the pavement according to the front width of his premises. Where the charge is to be in proportion to frontage the amount of the whole work is to be ascertained and each lot charged in the proportion its frontage bears to that of all the lots." And again: "Although the excavating spoken of in the affidavit of defense was not done immediately in front of the defendant's premises it is to be presumed that it was necessary to the proper laying of the pavement as a whole, and that the defendant's premises were benefited thereby. The cost of making such excavation entered into the cost and expense of the pavement laid in front of his premises." In conformity with this view of the law we find it laid down in 2 Dillon on Municipal Corporations, sec. 752, note 2, "That in making a local assessment for a municipal improvement upon adjoining property by the foot-front rule the amount of the whole work is to be ascertained and each lot charged in the proportion its frontage bears to that of all the lots." So in Cooley on Taxation (2d ed.), 655, it is said: "In assessing benefits the cost of the whole work distributed through the whole district is to be kept in view; the assessors cannot restrict themselves in the case of any particular lot to the cost of the improvement in front of it." And at page 646, in discussing the foot-front rule, it is said: "Ap-

portioning the cost by the frontage on the improvement, is adopted by the legislature as constituting in the judgment of its members an apportionment in proportion to benefits as nearly as reasonably practicable. . . . In some instances a somewhat different method has been adopted for levying the cost of local works. Instead of establishing a taxing district (such, it may be observed, as a sewer district, a certain section of the municipality to be paved, and the like) and apportioning the cost throughout it by some standard of benefits, actual or presumptive, the case of each individual fronting on the improvement has been taken by itself and that lot has been assessed with the cost of the improvement along its front or with perhaps one half the cost, leaving the opposite lot to be assessed for the other half. . . . It has been denied on what seemed the most conclusive grounds that this is permissible. It is not legitimate taxation because it is lacking in one of its indispensable elements. It considers each lot by itself compelling each to bear the burden of the improvement in front of it without reference to any contribution to be made to the improvement by any other property and it is consequently without any apportionment. From incidental circumstances the major part of the cost of an important public work may be expended in front of a single lot, those circumstances not at all contributing to make the improvement more valuable to the lot thus specially burdened, perhaps even having the opposite consequence."

Turning to the decided cases they are equally explicit. Thus in Ex parte Mayor of Albany, 23 Wendell, 277, where the cost of "repitching and repaving" a street was directed to be apportioned among the properties benefited, it is said that each lot is not to be assessed with the particular work done in front of it but the work on all is to be divided up among them in proportion to the advantage to each. So in City of Lexington v. McQuillan, 9 Dana (Ky.), 513, it was held that within the paving district created by the statute the expense of grading and paving must be distributed ratably upon some uniform system of distribution, and an assessment which charged against one lot the expense of grading and paving in front of it was held void because the work should have been proportioned as an entirety. And in Motz v. Detroit, 18 Mich. 495, it was decided that each property could not be compelled to pay the particular expense

of a municipal improvement in front of it and an assessment made upon that basis could not be sustained. In State v. Portage, 12 Wis. 562, where the charter of a city provided that grading and paving should be paid by a special tax to be levied on lots abutting on the street in proportion to the frontage of such lots respectively, it was declared that the section to be improved was to be treated as a whole and the cost of the whole work divided among the several lots according to their frontage. This method was also declared to be the proper one in Neenan v. Smith, 50 Mo. 525 ; s. c. 60 Mo. 292, and in Ware v. Jerseyville, 158 Ill. 234 ; while in Yesler v. Seattle, 1 Wash. 308, in a case of grading, the opposite method by an assessment on each lot for the entire expense of the improvement in front of it, was held to be erroneous.

In the case of Davis v. City of Litchfield, 145 Ill. 313, this question was so elaborately considered that I am moved to refer to and quote from it at some length. An ordinance had been passed providing for the paving of three blocks of a certain street. On one of these the street was seventy-five feet wide and on the other two it was sixty-four feet, but in the center of the last block a space twenty feet wide was taken for a park or grass plot, leaving but twenty-two feet on either side for paving. The commissioners appointed to fix the assessments, instead of assessing the cost of the whole improvement pro rata according to frontage on all the property abutting upon it, apparently took into consideration the different conditions in the several blocks and assessed against each lot the estimated cost of the improvement in front of that lot. This varied from the directions of the original ordinance and to meet it the ordinance was mended so as to provide that the special tax or assessment required to pay for the improvement should be levied on each property, " only in proportion to the amount of pavement in front of each of said lots, parts of lots and parcels of land along the line of said improvement," and it was held that this could not be sustained. " When the limits of the improvement are fixed by the ordinance," says SHOPE, J., 322, " the contiguous property is created by law into a taxing district, and, when the tax is to be imposed according to frontage, presumptively each lot or parcel of land is benefited by the proposed improvement, and its cost or such part thereof as is re-

quired to be raised by the special tax is to be apportioned upon such contiguous lots, blocks and parcels of land in the proportion that the front of each bears to the entire frontage included within the taxing district and made subject to the tax."

Again at page 324, he says : " It is therefore manifest if the scheme or plan devised by the amendment is carried into effect each piece of property will pay the full amount of the cost of the improvement in front of it and no more or less.  This is not the imposition of a special tax upon contiguous property but is an arbitrary imposition of the burden upon each lot of making the improvement in front of it."  Again, page 325 : " Neither by express words or necessary implication in such case is there authority conferred to arbitrarily assess against any particular lot or tract of land more than its proportionate share of the cost of the improvement ordered to be raised by special taxation and the expense of levying the same."  Again, page 328 : " Instead of establishing a taxing district and apportioning the cost of the improvement upon the property within it by some standard of benefit, actual or presumptive, it is an arbitrary and forced contribution and could be sustained only, if at all, when made under an express grant of the legislature of the state."  Again, page 329 : " It is manifest that a major part of the cost of the improvement may be necessarily expended in front of a single lot.  It may well happen that by either cutting down the street or filling it the value of the particular lot may be decreased while all other property upon the improvement may be benefited.  So the narrowing of the street by the creation of plots for ornamentation may add to the value of the contiguous property while under the rule adopted it will lessen the burden imposed."

Upon the strength of these authorities as well as upon principle, we should have no hesitation in holding that the method of making local assessments which they advocate is, at least as a general rule, the true one, and that is, that the improvement is to be treated as a whole, the whole cost of it being distributed among the properties abutting thereon according to benefits, which if estimated by the foot-front rule are to be measured not by the extent or cost of the improvement in front of each property but by the proportion which the lineal frontage of each bears to the whole frontage of the improvement.

It must be confessed, however, that there are several Pennsylvania decisions which seem to call this in question and which if carried to their full length apparently sanction the opposite doctrine. Thus in McGonigle v. Allegheny City, 44 Pa. 118, a lot owner across the street from whose property was a public common or park, was held chargeable with the cost of grading and paving the street in front of him for its whole width. "If we have no opposite neighbor to share the tax with him," says WOODWARD, J., "it is the price he pays for the privilege of an open common in his front. The location which enhances the value of his property subjects him to a correspondent increase of taxation, and this is right." That is to say, the benefit derived from the common is to be regarded as enhancing the benefit derived from the pavement along it with which it practically has nothing to do. It is respectfully submitted that had the improvement as a whole been taken into consideration and the whole cost of it, including the one half of the street which lay along the common been distributed pro rata upon all the properties abutting upon the improvement, or better yet, had the pavement along the common been regarded as an improvement to the public property for which the public should pay (Scammon v. City, 42 Ill. 192), the difficulty in the situation and the manifest inequality of the assessment would have disappeared. It is curious, moreover, to note that in Davis v. City of Litchfield, supra, where there was a grass plot twenty feet wide in the center of the street which reduced to that extent the width of the pavement along it, the supposed benefit derived from it was advanced to sustain the exactly opposite doctrine to that in the McGonigle case, to wit: that the properties opposite should be taxed not according to the reduced width of the street but according to their pro rata share of the whole pavement.

The case of Phila. v. Market Co., 154 Pa. 93; s. c. 161 Pa. 522, to which we are referred by defendant's counsel, does not, however, seem of any great significance in this connection. That was the case of a municipal claim for paving part of a street formerly occupied by market houses. The defense interposed was that a street railway company which occupied the street with its tracks was bound by statute to pave any street so occupied, and it was held that the duty of paving having

been put upon the railway company the adjoining property owners were relieved from it. What would have been the result had the duty of the railway company to pave been but partial and there had been other blocks in the improvement where the railway did not run, such as is in the present case, we can only conjecture. Neither is the question involved in Erie v. Moody, 171 Pa. 610, where a city street on the petition of a majority of the property owners was directed to be paved with sheet asphalt from curb to curb, the center of the street being occupied by a street railway which was bound by its undertakings to pave the part it occupied. It did pave but not with asphalt, being allowed by the city after the contract was let to pave between the tracks with stone, and it was held that the property owners could not set this up to defeat a recovery for the rest of the pavement. " It," (i. e. the work done by the street railway company) says McCollum, J., "was clearly in the interest of the owners of the abutting property, as well as in the interest of the municipality, because it relieved them from liability for at least seven eighths of one fourth of the cost of the entire improvement." Like the last case cited this only decides that to the extent that the duty of paving is put upon a street railway the property owners otherwise liable for the whole pavement are proportionately relieved, a conclusion, that, as matter of fact, it needs no discussion to sustain.

Of much more serious import is what appears in the case of Erie v. Butler, 120 Pa. 374. To a municipal claim for paving, one of the defenses set up in the affidavit was that the work was inferior and not as provided by the contract. In disposing of this it is among other things said by Paxson, J.: " All that the defendant is called upon to pay for is the pavement in front of his own property. He does not allege any special defect in this portion of the work except in his reference to the work on the street generally." A full reading of the case shows that this is merely an observation made in the course of the discussion and stands, therefore, as nothing more than a dictum, but unfortunately it is substantially repeated in other cases and even a dictum if repeated and accepted may become the law. Thus in Pittsburg v. MacConnell, 130 Pa. 463, to a municipal claim for grading and paving, the defendant set up in her affidavit that much of the pavement broke as soon as travel on it

was permitted and having an insufficient foundation sunk and fell into holes, thus becoming worthless. Of this part of the affidavit it was said per curiam : " As she was a stranger to the contract she would have no standing to defend upon the ground named unless she shows special injury to herself by reason thereof, and that special injury must relate to so much of the work as was charged against her property. The city is not seeking to hold her for any portion of the work done elsewhere. Upon this point her affidavit is not only lame and evasive but it is silent. She does not aver any defect in the work opposite her property." So in Harrisburg v. Baptist, 156 Pa. 526, where defects in the work were again sought to be set up, it is said by McPHERSON, J., whose opinion was adopted by the Supreme Court as its own : " It (the affidavit) does not aver that the pavement in front of the defendant's property for which she alone is called upon to pay is in any respect defective or unsatisfactory. This was held to be important at least, if not essential, in Erie City v. Butler, 120 Pa. 374."

Finally we have the case of Witman v. Reading, 169 Pa. 375, and the Park Avenue Sewers, 169 Pa. 433. In the former the city of Reading in providing for the sewering of an extensive district, in order to fix the local assessments, took the aggregate cost of local sewers for the whole district and treating the main sewers as local for the purposes of the assessment and requiring the excess of cost to be paid by the city, it divided the aggregate sum by the aggregate frontage of abutting lots and establishing a rate of cost in this way it assessed the rate so ascertained against each lot in accordance with its frontage, making an equitable allowance on corner lots liable for more than one sewer. It was objected to this method that properties in front of which the smaller sewers were laid were assessed with more than the cost of these sewers and had thus to pay in part the cost of other sewers from which they derived no benefit. " The objection," says MITCHELL, J., " must prevail, for it is settled that while the measure of assessment is the amount of the benefit yet it is limited to the cost of the improvement. If the cost is only one dollar a foot that is all that can be assessed on the property though the benefit may be equal to two dollars a foot. It may be said with some plausibility that while by the system pursued in this case the small

sewer fronts pay more than the actual cost of such sewers yet they get the advantage of the outlet into larger ones and therefore do not pay more than for the benefit received. If each local sewer had to be extended to the point of final discharge its length and cost would be greatly increased. If instead of being thus extended it gets its outlet through the medium of another sewer there is a certain fairness in assessing the properties with a part of the cost of that other sewer, and it is argued that such part may be reasonably included in the cost of the small sewer. This argument, however, is open to the serious objection that it presents no principle on which the limitations of such charges can be fixed. The main sewer into which any particular branch shall empty is not located or its size determined by the needs or convenience of that branch alone or even chiefly, but by the requirements of the whole district. This includes, or may include, many branches of different situations and very various cost. Thus one branch may be through ordinary ground having a natural grade in the right direction while another may have to be built up through low land with the wrong slope, or cut through rock at greatly increased expense. A ratio of cost made up of the average of these is not an accurate measure of any one of them." In the Park Sewer case two things were decided: First, that the city could not by creating a general sewer district assess part of the cost of the main sewer upon properties within the district not reached by the lateral sewers immediately provided for although they might be ultimately reached and benefited; and second, that even those reached by the laterals could not be made to pay for anything in excess of the cost of the local sewer necessary for them. By the conceded facts the property of the party complaining was assessed with the cost of a fifteen-inch main sewer while it was shown that a ten-inch local sewer would give it all the benefit it could derive from the improvement. "Such an improvement," says MITCHELL, J., "cannot be sustained. Appellant's property can only be charged with such proportion of the cost as would have paid for a branch sewer sufficient to give it all the benefits now enjoyed."

What rule then is to be deduced, taking the whole range of the authorities, both those within the state and those out of it, and what is to be done with the immediate questions involved

in the case before us ?   So far as the matter of street intersec-
tions is concerned we do not see how it is possible to regard
them as other than part of the general cost of the improvement,
the cost of making them to be borne by the abutting properties
upon the line of the whole improvement ratably.   The paving
of the street is petitioned for as a whole and the ordinance
based upon it must be so treated; the intersections with other
streets certainly could not be left out without impairing the
value and efficiency of every part of it.   This is the view taken
in every case to which our attention has been called.   Thus in
State v. City of Elizabeth, 30 N. J. Law, 365, it is held that
where a street is paved on the application of property owners
the intersections of the street with cross streets are to be borne
by them ; the application cannot be complied with by leaving
the intersections unpaved; and they cannot be put on the
property owners on cross streets who have not applied; neither,
as it might be added, can it be held that the city assumes to
pay for them unless that expressly appears.   So in Creighton
v. Scott, 14 Ohio, 438, it is said that as to the intersections
of streets it is the duty of councils to determine to which street
the expense of their improvement in any given case is to be
apportioned or whether to both.   If the object is to benefit or
improve but one street and in making the improvement across
the intersection the ones so crossed are only incidentally affected
the whole expenses may be properly assessed on the same prop-
erties on which the other expenses of the improvement are im-
posed.   Again in Lightner v. City of Peoria, 150 Ill. 80, it is
said that the paving of the intersections is necessary to the
continuity of the improvement and the benefits to be derived
therefrom by the contiguous property, and it was accordingly
held that the expense of such paving might be imposed upon
the property abutting on the improvement.   See also Powell v.
St. Joseph, 31 Mo. 347, Walters v. Lake, 129 Ill. 23, and Phila.
v. St. Ry. Co., 177 Pa. 379.

We see no valid objection therefore to this part of the as-
sessment before us.   The improvement was asked for as a whole
and was constructed as a whole ; to have any value it could not
be constructed otherwise.   The city did not undertake to pay
for the street intersections, the ordinance being silent as to who
should pay for them, and, in asking for the pavement, impliedly

the property owners did, unless the contrary was mentioned. Either this was the case or we must assume that the intersections were not to be paved, or if paved are not to be paid for, neither of which we are prepared to do.   Nor is it important in this connection that the defendant was not one of those who petitioned for the improvement.   The only fair conclusion is that those benefited by the improvement should pay for this part of it according to the benefits derived from the whole, that is to say by a pro rata distribution among all the properties on the line of improvement such as has been made.

The other question is one of no little difficulty.   As to the weight of authority outside of the state and as a matter of correct principle, we have already expressed our views.   But looking to the decisions of our own Supreme Court we are constrained to hold that the local situation of each property cannot be wholly disregarded.   In so ruling however we shall endeavor not to wander any further than possible from the cases which hold to a strict pro rata distribution of the cost of the whole improvement, and in some of them we may find the other principle in a measure recognized.   While it is indeed decided in Springfield v. Green, 120 Ill. 269, and Wilbur v. Springfield, 123 Ill. 395, that several streets differing in width, with railway tracks in some of them, the paving of which was excluded, may be embraced in one improvement and a pro rata foot front assessment of the cost of the whole improvement be made upon abutting properties; yet in Haley v. City of Alton, 152 Ill. 113, we find it held that it does not follow in such a case that each piece of property should pay the same amount per foot-front, and on the contrary that lots on the narrower streets may properly be assessed at a lower rate than those on the streets that are wider.   So in Findlay v. Frey, 51 Ohio, 390, where a street of varying width was · divided up by the paving ordinance into sections, each section being of uniform width, and each paying for its own part of the improvement, it was held that the assessment satisfied the law as to uniformity, and that the method adopted was a just one ; while in Jones v. District of Columbia, 3 App. D. C. 26, where different alleys running in different directions and of varying widths were improved as one, an assessment on abutting properties by dividing up the whole pro rata according to gross frontage, was declared invalid.   But

the most instructive case in this connection is Lightner v. City of Peoria, 150 Ill. 80. In that case Main street of the general width of 100 feet was to be curbed and paved for over a mile and was divided up by the paving ordinance into five parts. Over one portion of it there were double street railway tracks, over another single tracks, and for the rest of the way no tracks at all. In the first taxing division the cost per foot front was $9.20; in the second $7.80; in the third the roadway was but forty feet and the cost was reduced to $3.45; on the next it was $3.85; and in the last $5.37. In the last two sections the roadway was thirty-six feet wide and there was a variation in the depth of the excavation and the thickness of the concrete base. The assessments were made accordingly in the varying conditions of each section, to which it was objected that they should have been uniform throughout the whole of the improvement. In overruling this objection it is said by SHOPE, J.: " No reason is apparent why, when an improvement of an entire street benefits the contiguous property upon different parts of it in unequal proportions, the city council in the exercise of their discretion may not divide the improvement so as to secure practical uniformity in the distribution of the burden. Absolute equality in the imposition of the tax is not attainable, but in all cases the tax should be so levied and such system of apportionment adopted that the property subject to the tax as far as practicable will bear its just proportion of the burden in proportion to the benefit arising from the improvement; and where a difference exists not only in the nature, extent and cost of the improvement, but also in the benefits accruing to contiguous property upon different parts of the same improvement, the very plainest principles of justice would seem to require that the tax be so levied that the burden will be borne in proportion to the benefits received. It requires no evidence or argument to show that an improvement of a street through the business center of the city requiring greater width and solidarity of pavement would bear little proportion in the benefits conferred to the benefits accruing to residence property situated upon the outskirts of the city, and it would undoubtedly be true that the disproportion would arise proportionately as the improvement receded from the business center." In conformity with the same idea it was held in Voght v. Buffalo, 133 N. Y. 463, that

where there was a street railway on the north half of the street but not on the south half in an assessment according to benefits it was competent to adjudge the property on the north side benefited by the improvement to a greater extent than that on the south side. And in our own case of Scranton v. Davidson, 3 Lack. Jur. 141, already referred to, while it was declared that the improvement was to be taken as a whole and the assess-· ments made upon that basis, it was at the same time said: "There may be places in a long stretch of street which should be exceptionally treated; blocks where the roadway is very broad or very narrow or where one side is bounded by a public park and the property owners are bound for the whole width of the street; and a block through which a street railway runs may be of this exceptional character." The exception there recognized appears in the case before us and should in our judgment have been taken into account in arriving at the assessment which the defendant is called upon to pay. On the four blocks on which the defendant's property is situated, there is less pavement laid and less pavement in consequence for the property owners to pay for. Pavement for a part of the street has been imposed upon the street railways and the adjoining owners would seem entitled to the advantage of it, or in other words the special benefit to the properties in these blocks may be regarded as measured by the extent of the pavement in front of them. The same is true of the block between Wyoming and Penn avenues where the street railway company has been required to pave the space occupied by its single track together with a foot of the street on each side of it, as well as that between Penn avenue and Franklin where it also has a single track but has paved simply the space between its rails. As the matter now stands however the advantage derived from the paving done by the street railway is distributed among all the properties upon the whole line of the improvement, many of them several blocks away, instead of being confined to those properties immediately adjacent to it. If this were carried to its logical conclusion, properties on the portion of a street wholly occupied by street railway tracks might be made to pay as much as those where the streets are entirely clear of them, a position which we do not see our way to sustain. [It follows that the assessment made by the city engineer is incorrect; all that

the defendant can justly be called upon to pay for the improvement in front of his property is his proportionate share of it at the same rate as others similarly situated, which practically amounts in a case of paving such as this is, whatever it might in other classes of improvement, to the cost of the pavement in front of his property with a pro rata part of the street intersections added. According to the assessment made by the city engineer the defendant is called upon to pay $286, while in our judgment on the basis suggested he should be assessed with but $185. Judgment is therefore entered in accordance with the stipulation of the case stated in favor of the plaintiff for $185, without costs.] [3]

Plaintiff appealed.

*Errors assigned* were (1) in not directing judgment to be entered in favor of plaintiff for the amount of the assessment, to wit: $286. (2) In entering judgment in accordance with the stipulation of the case stated in favor of plaintiff for $185, without costs. (3) To a portion of the opinion, reciting same.

*A. A. Vosburg*, city solicitor, with him *D. J. Davis*, assistant city solicitor, for appellant.—If the decision in this case is allowed to stand, it will certainly create great confusion in the collection of municipal claims. The following are some of the complications that will arise, viz :

1. In what way the contractors for the work of paving will be paid the difference between the assessment made for their benefit, and the amount allowed by the court for that purpose ?

2. How the various assessments against the different properties upon Mulberry street are to be adjudicated, and according to what standard ?

We believe that the only safe rule to adopt is the one laid down in Hammett v. Phila., 65 Pa. 146. We say that these two legal propositions should stand.

1. That the asssssments for improvements whether made by viewers or by the city engineer, when made in pursuance to law are final and conclusive, and cannot be attacked in proceedings brought to collect the assessments.

2. That the rule adopted in this case by the city engineer, was the foot-front rule, which has been upheld in very many

cases, and that the amount of pave in front of the property cannot be considered in determining the assessments.

This principle is well settled by the authorities: 2 Dillon on Municipal Corporation, sec. 752, note 2: Cooley on Taxation (2d ed.), 65.

The section to be improved must be treated as a whole, and the cost of the whole work divided among the several lots according to their frontage: RICE J., in City of Wilkes-Barre v. McDermott, 6 Kulp, 345.

We cannot see why the learned court below should not have applied this principle of law to the case at bar. Indeed so far as the right of the city to collect from the appellee his proportionate share of the cost of constructing the street intersections is concerned, the court below adopted the principle stated, and held that he was liable. This was plainly in line with the authorities: State v. City of Elizabeth, 30 N. J. Law, 365; Creighton v. Scott, 14 Ohio, 438; Lightner v. City of Peoria, 150 Ill. 80; Philadelphia v. St. Ry. Co., 177 Pa. 379.

As to the other question, viz: the number of feet actually constructed in front of the property of the appellee, the learned court below seemed to hold that while the authorities outside of the state of Pennsylvania were in favor of the contention of the appellant, yet the decisions of our own state is to the contrary, and the judgment must therefore be for the appellee.

A careful examination of the decisions of our Supreme Court has failed to disclose any case which is absolutely in conflict with the principle stated by the best text writers, and by the courts of other states to which we have referred.

*I. H. Burns*, with him *P. W. Stokes*, for appellee.—The full and exhaustive examination of the question by the court below leaves little to be said in the argument in the way of citation or examination of the precedents and authorities of law.

We contend that this is not only the logical and equitable view of the subject, but that it is sustained by the decisions of our Supreme Court: Philadelphia v. Evans, 139 Pa. 483. The foot-front rule is arbitrary and unequal at best, because it makes no account of the actual benefit to particular properties by reason of the business to which it is devoted. A livery stable and a private residence may have the same frontage and

each required to pay the same, and yet one uses the pavement continually and the other very seldom, or not at all. When in addition to this you say that a property owner must help pay for his neighbor's pavement a mile away it is carrying the matter entirely too far. We contend that the judgment of the court below is not only in strict accordance with the precedents of our courts but also in harmony with equity and justice.

OPINION BY WILLIAM W. PORTER, J., May 24, 1900:

The learned judge of the court below has written an exhaustive and able opinion. After a review of the cases in states other than Pennsylvania, he reaches this conclusion: " Upon the strength of these authorities as well as upon principle, we should have no hesitation in holding that the method of making a local assessment, which they advocate, is, at least as a general rule the true one, and that is, that the improvement is to be treated as a whole, the whole cost of it being distributed among the properties abutting thereon, according to benefits, which, if estimated by the foot-front rule, are to be measured not by the extent or cost of the improvement in front of each property, but by the proportion which the lineal frontage of each bears to the whole frontage of the improvement." He then proceeds to an examination of the decided cases in Pennsylvania and concludes that they in a measure sanction the converse doctrine, and that the peculiar conditions attending the work to be done in the case of a particular property assessed on the foot-front rule, may be regarded in fixing the amount of the assessment as to that property.

We have considered the cases cited by the court and by counsel, including the elaborate opinion in the case of the City of Shreveport v. Prescott, 46 L. R. A. 193, with the note appended thereto. Some of the cases cited by the learned judge of the court below may be susceptible of a construction different from that put upon them by him, but having regard to the trend of the Pennsylvania decisions, we affirm the judgment upon the opinion of the court below and upon the facts of the case now before us.

Judgment affirmed.

W. D. PORTER, J., dissenting:

That no assessment can be made, nor lien filed, by a municipal

corporation to enforce the payment of municipal charges unless in the manner authorized by statute is well settled: Philadelphia v. Gratz, 38 Pa. 339; Mauch Chunk v. Shortz, 61 Pa. 399; McKeesport Borough v. Fidler, 147 Pa. 532. That the street in question in this proceeding was located within the built-up portion of the city of Scranton is not disputed. When it came to paving this street, therefore, the improvement might have been undertaken and the assessment of benefits made upon the abutting property under the provisions of either one of two acts of assembly, viz: the Act of May 16, 1889, P. L. 228, or the Act of May 16, 1891, P. L. 75. The former act provides a code for government of cities of the third class, and under its provisions the expense of paving may be charged, in whole or in part, on the city, or on real estate bounding on the street paved, according to the "foot-front" rule. No manner of making the assessment other than by the foot rule is authorized by this statute. Under the terms of the Act of May 16, 1891, the assessment for such an improvement is made upon the basis of peculiar benefits to the property, without exclusive regard to its frontage, to be ascertained by viewers appointed by the court, from whose report an appeal lies and a jury trial may be had. If the persons interested desire the improvement to be made upon the basis of liability according to benefits, they will proceed under the act of 1891; but if they wish the foot-front rule applied, they will follow the line of procedure marked out by the act of 1889; the alternative is for the lot owners to settle: Hand v. Fellows, 148 Pa. 456. The case stated shows that the requisite number of owners, representing the required frontage on the street, presented a petition, in due form, to the councils of the city, praying that the street be paved and the cost of the improvement assessed against abutting property owners according to the foot-front rule. This was an election by the property owners to proceed under the act of 1889, and that the assessment upon the properties when made should be in accordance with the terms of that statute. This petition vested in the city authorities jurisdiction to order the improvement to be made, enter into a contract for the performance of the work and assess the costs thereof upon the abutting property under the foot-front rule. The councils of the city, in pursuance of the terms of the petition, by an ordinance duly

approved by the mayor, ordered the work to be done, provided for the payment of the cost and expense thereof by the abutting owners according to the foot-front rule, entered into a contract for the performance thereof, and authorized the city engineer to make the assessments upon abutting property according to the foot-front rule. The contract was duly certified by the proper officer and all the requirements of the various acts of assembly touching such contracts and the execution of the work were accurately complied with. The city engineer made the assessments in accordance with the provisions of the act of 1889, and of the ordinance authorizing the work, in accordance with the foot-front rule. The defendant's property abutted on the improvement and was assessed according to its frontage, at the same rate per foot which was applied to every lot upon the entire line of the street. The appellee seeks to escape the operation of the foot-front rule, upon the ground that a part of the street in front of his lot was occupied by a double tracked street railway, which had been paved by the company operating it, and therefore there was not so much work done immediately in front of his place as was done in front of some of the other lots which had the same frontage.

The learned judge of the court below, while of opinion that the weight of judicial and text book authority outside of Pennsylvania was adverse to the contention of the appellee, felt constrained, by certain Pennsylvania authorities, to cut down this assessment and charge the defendant upon a basis which is not authorized by either of the acts of assembly under which there was any authority to make an assessment, the judgment entered being upon the basis of the supposed cost of the work done in the street immediately in front of this particular lot. The conclusion at which the learned court below arrived is not, in my opinion, sustained by the cases relied upon. The case of McGonigle v. The City of Allegheny, 44 Pa. 118, which is thought to sustain the position of the appellee, must be considered in the light of the case stated, upon which the court passed. The street in question there was one which from end to end was upon one side bounded by the east common, and on the west side by private property. The title to the common was in the city, subject to the right of common in the owners of in-lots. The improvement was made under an act which authorized the

city to grade and pave streets, and to levy and collect a special tax for defraying the expense thereof "by an equal assessment on the foot front bounding on said street." It was decided that the east common, the title to which was in the city, was not assessable, and that the entire cost of the improvement must be collected from the properties which were assessable. In no sense can that case be said to hold that each property must pay for the cost of the work done immediately in front thereof. The cases in which our Supreme Court sustained judgments entered in default of a sufficient affidavit of defense, cited by the learned court below, were not in any sense attacks upon the manner of assessment: Erie City v. Butler, 120 Pa. 374; Pittsburg v. MacConnell, 130 Pa. 463; Harrisburg v. Baptist, 156 Pa. 526. It is true that in the first named case Mr. Justice PAXSON, who delivered the opinion of the court, did use the expression: "All that the defendant is called upon to pay for is the pavement in front of his own property. He does not allege any special defect in this portion of the work, except in his reference to the work on the street generally." This expression was used in discussing the allegations of the defendant that there were defects in the work, and had no reference whatever to the manner of making the assessment. The allegations of defect were held to be too general, and upon the authority of Pepper v. Philadelphia, 114 Pa. 96, it was said that "if the work was substantially done as contracted for and answered the purpose intended, but in some minor particulars, which did not materially affect its usefulness, the contractor had failed, then the property owner might have a deduction for such failure." The expression above quoted is not to be wrested from its context and made to declare the principle that assessments for paving are to be made in accordance with the cost of the pavement in front of the property. The same expression was used in the other two cases cited, under the same circumstances and in the same connection, but the views of Mr. Chief Justice PAXSON are clearly indicated in Pittsburg v. MacConnell, in speaking of the defense of defective workmanship: "If deficient in some minor particulars, the defendant can only have a deduction for such defects. Here the defendant does not say to what extent she has been injured by the defective work. She says the work was let at a high price, but

is silent as to what would have been a fair price therefor."
Thus understood, the expressions by which the learned court
below was led to the conclusion that the cost of paving in front
of each particular lot was to be assessed against that lot, with-
out regard to the cost of paving in front of other lots, were
pertinent to the cases in which the expressions were used, but
if they are to be given the meaning attached to them by the
court below they are to be considered as mere dicta.   The two
other cases relied upon to sustain the contention of the appellee
are Witman v. City of Reading, 169 Pa. 375, and Park Avenue
Sewers, 169 Pa. 433.   In the former case the city of Reading
had, by ordinance, constituted a sewer district, and provided
that a certain portion of the cost of main sewers, as well as the
cost of all lateral or branch sewers, should be aggregated and
assessed upon the properties abutting on the various lateral
sewers according to the foot-front rule.   These lateral sewers
were necessarily of different sizes and the cost of construction
was necessarily influenced by the various localities in which
they were situated; the construction of some would involve
deep excavations, perhaps, through solid rock, others would
have to be carried above the natural grade of low ground, and
the cost of one was no criterion whatever upon which to esti-
mate the cost of the construction of another.   These lateral
sewers were not necessarily connected with or dependent upon
each other.   It was, therefore, manifest that under the system
of assessment provided by this ordinance the small lateral
sewers and those of inexpensive construction were paying for a
part of the construction of the larger and expensive lateral
sewers, from which they derived no benefit whatever.   It was
held that the ratio of cost made up of the average of these
sewers was not an accurate measure of any one of them.
When Mr. Justice MITCHELL, speaking for the court in that
case, said, " If the cost is only $1.00 a foot, that is all that can
be assessed on the property, though the benefit may be equal to
$2.00 a foot, ' the expression is to be taken as applying to the
system, and meant that if the cost and expense of a lateral
sewer amounted to only $1.00 a foot front upon all the pro-
perty legally assessable, that the city could collect no more.   It
is a well-settled rule that the city cannot collect assessments
which in the aggregate exceed the cost of the improvement,

and thus make a profit out of the work. The case of Park Avenue Sewers decided that a property owner could not be assessed with the cost of a fifteen-inch main sewer, when the facts agreed upon by counsel showed that a ten-inch local sewer would have been sufficient to give the property all the benefit it derived from the improvement. This decision was put upon the ground that such an assessment was contrary to the express terms of the act of 1891, section 8, by which the costs and expenses are to be assessed according to benefits, if sufficient property benefited can be found. And for the further reason, that " the limit of special benefit is the limit of liability to special assessment." Neither of these cases afford any basis for the contention that each property is to pay for the work done immediately in front of it. The meaning of these cases is that the cost of each sewer must be ascertained separately and the assessments therefor made upon the basis of the special benefits resulting to the properties liable under the statutes. There is no suggestion in either of the cases that where the construction of a lateral sewer has on one part of its line met with unusual difficulties and involved extraordinary expenditures, that all of those expenditures must be met by the owner in front of whose property the obstacle was encountered, leaving other owners in, perhaps, the same square to pay only for the comparatively small expenditure involved in front of their respective properties. The proceedings for the assessment in the case of the Park Avenue Sewers, above cited, were under the Act of May 16, 1891, P. L. 75, sec. 8, which also applies to the grading of streets. Can it be for one moment contended that when a street is graded the owner must pay for the amount of grading done in front of his particular property? If so, the property least benefited is certain to pay the highest assessment, for the property which lies practically at the established grade would have little or no work done in front of it, while the properties upon which there were heavy fills or deep cuts might be called upon to pay assessments which would simply amount to confiscation.

The principle of taxation upon which assessments upon property abutting upon a public improvement are sustained is, that such properties have from the improvement received a benefit which is peculiar to them, as distinguished from the benefits

which accrue to other properties within the municipality not so situated. If the case is within the principle, the proportion of contribution and other details are within the discretion of the taxing power. Learned jurists have differed as to the convenience or fairness of the different methods of ascertaining the proportion of contribution to be made by owners of abutting property. Mr. Justice Sharswood, in Hammett v. Philadelphia, 65 Pa. 146, expressed a preference for the system which adopted the foot-front rule, while Mr. Justice Mitchell, in Witman v. Reading, supra, declared a preference for the rule based upon difference in market value of the property before and after the improvement. Both of the learned justices unite in the declaration that " no system of taxation which the wit of man ever devised has been found perfectly equal." Whatever rule is adopted by the taxing power, it must be general, certain and uniform, and must apply to all who are under the law liable to the assessment: Hammett v. Philadelphia, supra; Witman v. Reading, supra; Harrisburg v. McCormick, 129 Pa. 213. A city cannot subject its citizens to a legal obligation except by the lawful exercise of its powers, and if the law prescribes the manner in which a corporation or its officers must act, they must follow the requirements of the law under which they propose to act: Athens Borough v. Carmer, 169 Pa. 426; Fell v. Philadelphia, 81 Pa. 58.

The property of the appellee fronted upon this improvement. It is conceded in the case stated that it was subject to assessment for the improvement. The only question involved is the amount which, under the law, he ought to contribute. The pavement was petitioned for, ordained by the city, contracted for and the work done under the provisions of the act of May 23, 1889. The city clearly had jurisdiction to enact the ordinance, contract for the improvement and make the assessment. The work is admitted to have been done in accordance with the contract and specifications. In accordance with the provisions of the 31st section of the Act of May 23, 1889, P. L. 277, 327, councils authorized the city engineer to make the assessments. The foot-front rule may not be the best which could have been devised for making assessments for street improvements of this character, but it was the only one that this city engineer had jurisdiction to apply; he was bound by the terms of the act

of assembly under which the improvement was made.    By force of the petition presented to councils and the ordinance passed by said bodies, in accordance with the provisions of the act of assembly, this improvement was made at the expense of the owners of real estate abutting thereon, " by an equal assessment on said property in proportion to the number of feet the same fronts on the street." The city engineer made the assessment in strict accordance with the law under which he acted, and the result was that the property of the appellee was assessed in the sum of $286, said amount being in proportion to the number of feet which his property fronts upon the street. This was an assessment made in pursuance of law, is final and conclusive and cannot again be reviewed by any other tribunal: Hammett v. Philadelphia, 65 Pa. 146 ; Commonwealth v. Woods, 44 Pa. 113.   The law had in this case fixed the manner in which the peculiar benefits to the property were to be ascertained, and it was not within the jurisdiction of this city engineer or any other tribunal to set aside the legislative mandate.    It was not for the city engineer to inquire what that part of the improvement in front of this particular property had cost.   If, because of the difficulty of procuring the foundation, or because of the distance which materials had to be transported, this particular piece of pavement had cost twice as much per square yard as any other part of the improvement, the assessment on this particular property could not have been increased ; the property was entitled to the protection of the foot-front rule.   The property of the appellee was benefited by the improvement as a whole.   The small patch of pavement in front of his house would have been of very little benefit to him, or anybody else ; but when the entire street was well paved, affording a safe and convenient means of travel upon the roadway to and from the property, the benefits to the property were made manifest.   This property was, therefore, within the principle which supports special assessments for special benefits, and being within the principle the proportion of contribution was within the discretion of the taxing power, and the taxing power has enacted and ordained that the property shall be assessed in proportion to the number of feet it fronts upon the street.    The assessment by the city engineer is sustained by statutory authority.   The assessment made by the learned court

below is without any statutory authority whatever. The city authorities were, by statute, vested with jurisdiction in the premises, and in the absence of any allegation of fraud, or defects in the work, or that the engineer had exceeded his jurisdiction in assessing the appellee upon a greater frontage than he owned, I am of opinion that the assessment made by the engineer was conclusive. For these reasons I would reverse the judgment of the court below and enter judgment against the appellee in the amount of the assessment made by the city engineer.