# Anderson, Appellant, v. Lower Merion Township.

*Constitutional law—Sewers—Townships of the first class—Act of February 23, 1905, P. L. 22.*

The creation and maintenance of a sewerage system for a municipality is clearly a municipal function, and hence the legislature may confer authority for the purpose on a class of municipalities without impinging the constitution.

The Act of February 23, 1905, P. L. 22, entitled "An Act to provide for charging the cost of construction of sewers and drains heretofore or hereafter constructed in townships of the first class against properties accommodated or benefited thereby; authorizing the township commissioners to create sewer districts, to apportion the cost of sewer construction among the same, and to prescribe the manner in which the charges shall be assessed on properties, and municipal liens filed for the same, or to assess an annual tax for the payment of such cost," is not unconstitutional insofar as it gives townships of the first class the power to divide the township into sewer districts and provide for alternative methods of assessment on properties benefited.

Under the act the township authorities may apply the foot front rule to a densely populated sewer district, and the rule of assessment according to benefits to a sewer district where the properties are of a rural character.

The Act of February 23, 1905, P. L. 22, is not unconstitutional, in authorizing the township commissioners, instead of the court, to appoint viewers to ascertain the benefits accruing from sewer improvements.

The Act of February 23, 1905, P. L. 22, does not offend against article IX, sec. 1 of the constitution, which provides that all taxation must "be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws;" nor does the act exceed the general powers of taxation conferred upon the legislature; nor is its effect to confiscate private property in violation of the restrictions of the declaration of rights; nor is it unconstitutional because retroactive in character as to a township which had already paid for a sewer improvement; but the act is unconstitutional insofar as it authorizes the assessment of benefits where the sewer had passed through private lands.

Argued Feb. 5, 1907.   Appeals, Nos. 345, 347, 350 and 351, Jan. T., 1906, by plaintiff, from decrees of C. P. Montgomery Co., June T., 1905, Nos, 8, 9, 11 and 16, on bills in equity in

cases of Joseph W. Anderson et al. v. Board of Township Commissioners of Lower Merion Township. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Affirmed.

Bills in equity for an injunction.

The court, SWARTZ, P. J., and WEAND, J., filed the following adjudication :

Lower Merion is a township of the first class. The board of township commissioners constructed sewers in certain sections of the township. Assessments for benefits were made under the act of February 23, 1905, against properties situate in said sections or districts to collect the cost of the construction of the service sewers. The several bills in equity were filed by property owners to restrain the collection of the assessments made against their properties. It is contended that the assessments are illegal because the proceedings under which they were made are based upon an act of assembly that is in conflict with the constitution of the state ; secondly, that the sewers constructed were paid for by loans created under a vote of the electors of the township and by an ordinance of the commissioners, and that such action was conclusive against any further assessment to pay for the construction of the sewers ; and thirdly, that the methods of assessment invoked are illegal, and cannot be enforced even if the properties are liable to assessment.

In our findings and conclusions we have not separated the cases. Bills Nos. 8, 9 and 16 relate to properties located within the limits of the third sewer district. Bill No. 11 relates to properties located either in the first district or in the second district.

In districts one and two the assessments are made in proportion to the frontage of each property abutting on a sewer, while in district three the assessment against each property is determined by viewers appointed by the board of township commissioners.

Where the findings and conclusions did not relate to all the bills there is no difficulty in referring them to the proper bill when we keep in mind the two district methods of assessments —the one the foot front rule ; the other assessment by viewers appointed by the township commissioners.

### FINDINGS OF FACTS.

1. Lower Merion is a township of the first class and became such in the year 1900.

2. On April 16, 1902, the board of township commissioners passed an ordinance to establish and maintain a system of sewers, culverts, pipes and drainage to dispose of domestic drainage and sewage in said township. A system of sewers was designated on plans and maps and was subsequently constructed. The work was completed prior to February 23, 1905, but within six months of said date. The action of the township commissioners was in pursuance of the authority conferred upon them by the act of the general assembly, approved May 24, 1901, P. L. 294.

3. The township commissioners ascertained that the cost of the sewer system would amount to more than two per centum of the last preceding assessed valuation of taxable property in said township. They resolved to submit to the electors the question, whether an indebtedness of $250,000 should be incurred " for the purpose of paying the cost of constructing a system of sewers and drainage in said township as heretofore planned and adopted, including the pumping engines and necessary appurtenances." A majority of the votes polled in the whole township was in favor of incurring the said indebtedness. After this vote of the electors, the township commissioners on May 20, 1903, accepted the bids of the contractors for the construction of a portion of the system of sewers. Bonds were issued for the purpose of securing the loan of $250,000, and these were negotiated and the money was realized by the township commissioners.

4. On June 17, 1903, the board of township commissioners appropriated $250,000, or so much thereof as may be necessary, to the committee on health and drainage for the purpose of constructing a system of sewers for said township in accordance with an ordinance passed and approved April 16, 1902.

5. It was ascertained that the loan of $250,000 was insufficient to pay for the projected sewer system, and on June 1, 1904, the board of township commissioners passed an ordinance authorizing an additional loan of $200,000 to complete the sewer system. Bonds to this amount were also negotiated,

and on July 20, 1904, the board of township commissioners, by ordinance, appropriated $140,000 out of said second loan, to the committee on health and drainage for the purpose of sewer construction.

6. The entire cost of the sewer system, including pumping stations, receiving tanks and discharge pipes was $424,741.75. All of this sum was paid or provided for from the proceeds of the two loans aforesaid. This sewer system so constructed and paid for is the identical system now in use. The assessments in controversy are for benefits, and the commissioners demand from the property owners the payment of over $300,000 of the said expenditure of $424,000.

7. By ordinance of the board of township commissioners, property owners abutting on said sewers could be required to connect with and use the sewers of the township. In pursuance of said ordinance the owners of property abutting on the said sewers were notified to connect their respective buildings with said sewers. Failure to observe the order subjected the property owner to certain penalties. The board of township commissioners also established a rate of annual charges for all persons who connected with the sewers. These annual sewer charges will produce an amount somewhat in excess of the cost of operating and maintaining the sewer system. This action on the part of the township commissioners, requiring connections and annual rentals, was all taken prior to the passage of the Act of February 23, 1905, P. L. 22, and the action was taken by authority of the Act of May 24, 1901, P. L. 294.

8. The ordinance providing for the issuing of the bonds also states that " an annual tax is hereby levied upon the taxable property within the township of Lower Merion as the same shall appear by the assessment and valuation thereof," for the payment of the interest and the principal of said bonds as they shall mature. These taxes were so levied on June 24, 1903, and June 1, 1904, to cover a period of twenty-nine years, during which time the bonds were to be liquidated.

9. The sewer system so constructed under the Act of May 24, 1901, P. L. 294, passed in part over private lands, the said act having given the authority for such construction. The act also provided a method of assessing the damages for land oc-

cupied where the lines of sewers were not located on public roads. The court of common pleas was to appoint the jury. Several juries were appointed by said court to assess the damages for injury to private property. The complainant for the estate of Wistar Morris (Bill No. 16) had a jury appointed, and the jury in that case awarded damages in the sum of $1,500. The report was filed on February 6, 1905—that is, before the passage of the act of February 23, 1905. The township commissioners took an appeal from the award.

10. The money to pay for the entire system of sewers was in the hands of the township commissioners as early as July 20, 1904, when the last appropriation was made to the committee on health and drainage. The annual rates for the use of the sewers were established apparently as early as December 2, 1903. The construction of the sewer system was completed, the money for its cost was paid or provided for, and its operation was assured by the enforced connections and the rentals for its maintenance. This was the condition of affairs for some time prior to February 23, 1905, although less than six months intervened between the completion of the system and the date just named.

11. On March 1, 1905, an ordinance was passed by the township commissioners in pursuance of the act of the general assembly of February 23, 1905. According to this ordinance there is no change in the sewer system in the slightest degree, either in construction or operation, but liability of the property owners for the costs of construction is changed. Under the new ordinance the cost of the service sewers—$300,000— is to be paid by the property owners benefited, while under the original proceedings the entire cost was placed on all the landowners within the township.

The sewer system embraces about 5,300 acres of ground. By the new ordinance this territory is divided into three sewer districts. No. 1 contains 900 acres, upon which 1,086 houses are erected. No. 2 contains 900 acres, and about 247 houses. No. 3 contains 3,500 acres, and about 150 houses.

In sewer districts Nos. 1 and 2 the ordinance provides for the assessment according to the foot frontage rule. The assessment, however, is only for the cost of the construction of service sewers, that is, the large sewers when used as service

sewers are computed at the cost of eight-inch branch sewers. No charge is made for main sewers not used as service sewers, and no charge is made for the costs of the pumping stations. The assessment basis in No. 1 is $141,682, while the whole cost of the sewer system chargeable to this district is nearly $224,000. The assessment basis for No. 2 district is $60,532, while the cost of the whole system in this district is over $64,000. In No. 1 district the difference between the assessment basis and the actual cost of the system is very marked, because the pumping stations, tanks and discharge pipes constitute a large part of the whole cost, while in sewer district No. 2 there are no expenses of this character; the sewage is carried off by gravity alone.

In sewer district No. 3 the ordinance provides for an assessment according to benefits, these benefits to be determined by viewers appointed by the board of township commissioners. The assessment basis is $127,755, the whole cost $136,752.

12. In sewer district No. 2 the lines of pipes follow the streets, and do not pass over private land. With a few exceptions this is also true of sewer district No. 1. The only deviation from the streets for any extended distance occurs where a line of pipes runs through lands of Joshua L. Bailey. There is, however, no assessment for this line over private ground. Mr. Bailey is assessed for the sewer line on Lancaster avenue, and also for the line on Church street or Linwood avenue, and his property abuts on these streets. The same is true where a line of pipes passes over a section of the Haverford college grounds. The college is not assessed for this through pipe line, but is assessed for the line along Rail Road avenue, upon which the college grounds abut.

In sewer district No. 3 the pipe lines run over private property at numerous points. In many cases where the line runs through a private tract that property also abuts on a sewer line on a street. In some cases, however, a pipe line passes through a property where that property does not have a sewer line on a street or on any boundary line of the property. Properties, whether in the one situation or the other, were assessed for benefits by viewers appointed by the **board** of township commissioners.

13. The properties assessed by the foot front rule in sewer

districts one and two are urban and not rural. The only property used for farming purposes that is assessed in No. 2 is the Lodge tract. This tract has a frontage of 610 feet on Bala avenue, a fine wide street. The property is urban, notwithstanding its present use. The neighboring properties to the east and west and on the opposite side of the avenue are urban. The villages of Bala and Cynwyd form this sewer district. There are no farm lands in district No. 1, abutting on any sewer line. The villages of Rosemont, Bryn Mawr, Haverford and Ardmore constitute this sewer district, and there are no intervening rural lands between the end of one of these villages and the beginning of the next. The whole territory in districts Nos. 1 and 2 is devoted to or is ripe for residential purposes, although some of the owners may be unwilling to sell presently. Where the streets and roads are not lined with built up houses and stores, the lands are devoted to fine residential homes, ornamented with trees and shrubbery, and enjoy all the comforts of city homes, so far as water pipes, street lights, police and fire protection, and fine streets are concerned. These houses are occupied very largely by business and professional men engaged daily in the city of Philadelphia.

14. In assessing for benefits in sewer districts Nos. 1 and 2, the entire cost of the service sewer in each district was divided by the whole number of feet of sewer frontage in the district, and the quotient was taken as the benefit per foot to each property owner whose land abutted on the sewer system. By this computation each foot of frontage was charged a benefit of ninety cents. Apparently the computation in each district produced the same quotient of ninety cents.

The natural surface of the various streets is somewhat irregular. There was diversity in the conformation of the ground, and upon some streets or lines the sewer trench at sections was more than thirty feet deep, while on other streets or lines the depth was less than three feet. At Thompson street the trench in parts had a depth of thirty-two feet, while at Wyoming avenue the depth was only three and six-tenths feet. In district No. 2 the trench on Bala avenue at some points had a depth of over eighteen feet, while on some of the other streets the depth did not exceed four or five feet. Necessarily the

sewer cost on different streets was very disproportionate, even where the size of the pipes is the same. One street has a natural grade in the right direction for a sewer, another must be built through a wrong slope by deep excavation. "A ratio cost made up of the average of these is not an accurate measure of any one of them:" Witman v. City of Reading, 169 Pa. 375.

15. Certificates have been presented from the clerks of the townships of the first class throughout the commonwealth, and according to these certificates there is no township of the first class other than Lower Merion, in which a system of sewers or drains was finally completed within six months of February 23, 1905. The certificates to that effect were offered in evidence from twenty townships of the first class.

16. The following plaintiffs are owners of properties traversed by sewers or pipe lines. · We find this fact from the evidence and maps before us, but cannot vouch for the absolute correctness of our finding, as the evidence was not specially directed to this inquiry: The Girard Trust Company, trustees for the estate of Wistar Morris, deceased; Bryn Mawr Hotel Company, Charles E. Mather, Eulalie W. Leslie, I. Layton Register, Mary P. Ashbridge, Rebecca E. Ashbridge and Lida H. Ashbridge, tenants in common. Some of the complainants' properties may abut on private roads having sewers. If so, then in some of these cases their properties may not abut upon any public highway occupied by a sewer line.

CONCLUSIONS OF LAW.

1. Under the facts as found by us, the properties in sewer districts 1 and 2 are of such a character and situation that the foot front rule of assessment is fairly applicable to them.

2. To charge each property according to the average cost per foot frontage in the whole sewer district is not allowable where the cost of construction of one branch or line, as in the case before us, is entirely disproportionate with the cost of another branch or line. As this was the method used by the commissioners in applying the foot front rule, it follows that the assessments in districts Nos. 1 and 2 are incorrect. Some properties are charged too much, while others are not charged enough.

3. The assessment of benefits by viewers appointed by the board of commissioners, against properties abutting on a public street or highway, is not in violation of any provision of the constitution of the state where the benefits are assessed for service sewers located on such highways.

4. The assessment of benefits against properties by viewers appointed by the board of township commissioners, where a sewer line passes over private property, is illegal. Such assessment must be made by a jury appointed by the court, as the assessment involves damages arising under the exercise of the right of eminent domain. The viewers appointed by the board of commissioners did more than assess benefits. They declare, " where said sewer extends through private property we have given due consideration to the question of possible damage to such property caused by the construction of the sewer and have weighed carefully the advantages and disadvantages thereof."

5. The legislature has the power and authority to impose a tax or municipal assessment for sewer benefits special to the property in townships of the first class, although the improvement for which the tax is assessed was made before the law was enacted which gives the right to assess the tax.

6. The act of February 23, 1905, is not unconstitutional as to its retroactive feature, even if it be a fact that this feature will not apply to any sewer system fully completed other than the one in the township of Lower Merion.

7. The act of February 23, 1905, is applicable to the sewer construction in Lower Merion township, although the work was completed and paid for before the passage of the said act of 1905. The provisions of the act, to the extent that they were used or applied in the assessment of benefits, are not unconstitutional, but the foot front rule was not properly applied and the viewers appointed by the commissioners had no authority under the act to make the assessments as they were made in those cases where the sewer lines passed over private lands. The act does not confer upon the viewers appointed by the commissioners the right to assess damages where the land is taken under the right of eminent domain.

8. We conclude that the following decrees and orders should be made in the several proceedings :

And now, after due consideration, it is ordered, adjudged and decreed that the bill filed by Joseph W. Anderson and others, being No. 9, June Term, 1905, be dismissed at the cost of the plaintiffs.

It is ordered, adjudged and decreed that the defendant commissioners be enjoined from proceeding in any manner whatever for the collection of any assessments set out in the proceedings against any of the properties of the plaintiffs in bill No. 8, June Term, 1905, where the sewer line passes over or traverses the private lands of any plaintiff, and the liens filed against such properties are hereby declared null and void and are stricken from the record.

The defendant is directed to pay the costs of the proceedings under this bill.

It is ordered, adjudged and decreed that the assessments made against the properties of plaintiffs in bill No. 11, June Term, 1905, were made upon an improper basis of assessment, and each plaintiff is allowed to show in any proceeding to collect the assessment that his property is charged more by the commissioners' mode of assessment than its proper share for the sewer in front of it. The defendant is directed to pay the costs of the proceedings under this bill.

It is ordered, adjudged and decreed that the defendant commissioners be enjoined from proceeding in any manner whatsoever for the collection of the assessment set out in the bill of the Girard Trust Company, trustees of the estate of Wistar Morris, deceased, bill No. 16, June Term, 1905, and the lien filed against the property of said estate is hereby declared null and void, and is stricken from the record, and the defendant is directed to pay the costs in this proceeding.

On exceptions the court entered the following final decree:

And now, October 29, 1906, the request for additional findings is refused, the exceptions filed in each case are dismissed, and it is now ordered, adjudged and decreed, after due consideration and deliberation, that the assessments made against the properties of the plaintiffs in bill No. 11, June Term, 1905, were made upon an improper basis, and each plaintiff must be allowed to show in any proceeding on the lien or other proceeding to collect the assessment that his property is charged more by the commissioners' mode of assessment than its

proper share for the cost of the construction of the sewer in front of it. The costs to be paid by the defendant.

*Errors assigned* were the decrees of the court.

*Wm. Righter Fisher* and *John G. Johnson,* with them *Montgomery Evans, Townsend, Elliott & Townsend, Louis M. Childs, Wanger & Knipe, George Vaux, Jr., W. W. Montgomery* and *George S. Graham,* for appellants.—The act is in violation of article IX, sec. 1, of the constitution, which requires that " All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax ; and shall be levied and collected under general laws," and that it also exceeds the general powers of taxation conferred upon the legislature, and is, in its essence, an act authorizing the confiscation of private property and its application to a public use, in violation of the restrictions of the bill of rights : Hammett v. Phila., 65 Pa. 146 ; Washington Ave., 69 Pa. 352 ; Morewood Ave., 159 Pa. 20 ; Park Ave. Sewers, 169 Pa. 433 ; Witman v. Reading, 169 Pa. 375 ; Appeal of the Protestant Orphan Asylum, 111 Pa. 135 ; Ayars's Appeal, 122 Pa. 266 ; Wyoming St., Pittsburg, 137 Pa. 494 ; Pittsburg's Petition, 138 Pa. 401.

The act is in violation of article XVI, sec. 8, of the constitution, which prohibits the legislature from depriving any person of an appeal from any preliminary assessment of damages by viewers, or otherwise, where property has been taken by any corporation or individual in the exercise of the right of eminent domain; and secures to such person, in all cases of appeal, a jury trial for the determination of such damages: Pusey's Appeal, 83 Pa. 67 ; Fisher v. Baden Gas Co., 138 Pa. 301 ; Mt. Pleasant Ave., Tourison's Appeal, 171 Pa. 38 ; Beechwood Ave. Sewer Cases, 179 Pa. 490, 494.

There are no such constitutional provisions in the act capable of sustaining alone, or in conjunction with each other, proceedings of any kind for the levying of special assessments. If such provisions are to be found there, not in themselves obnoxious to constitutional objection, they are in every instance so interwoven with and dependent upon others that are clearly unconstitutional and void that they cannot be sep-

arately preserved and must fall with the act, the whole scheme and purpose of which is fatally out of harmony with constitutional requirements. See Cooley's Constitutional Limitations, 6th ed., p. 211, etc.; Pittsburg's Petition, 138 Pa. 401; Ayars's Appeal, 122 Pa. 266.

*Rowland Evans* and *James Alcorn*, for appellee.—The act is constitutional: Reeves v. Traction Co., 152 Pa. 153; Com. v. Guthrie, 203 Pa. 209.

The provision authorizing the division of the territory supplied by the sewers into sewer districts, and providing for three alternative methods of assessment, is similar to that provided in former legislation which has been repeatedly sustained by this court. See Oil City v. Boiler Works, 152 Pa. 348; Witman v. City of Reading, 169 Pa. 375; Winter v. Reading, 15 W. N. C. 329.

It is objected that the method of assessment in question is vicious because the assessors were appointed by the township commissioners and not by the court; but assessments of this character have been repeatedly sustained: Com. v. Woods, 44 Pa. 113; Schenley v. Allegheny, 36 Pa. 29; Scranton v. Whyte, 148 Pa. 419; Oil City v. Boiler Works, 152 Pa. 348; Gault's App., 33 Pa. 94.

In short, there is nothing novel or original in the act of February 23, 1905. It appears to have copied in large measure from the Act of May 23, 1889, P. L. 277, relating to cities of the third class, the provisions of which, similar to those of the act of 1905, having been repeatedly sustained by the court: Oil City v. Boiler Works, 152 Pa. 348; Scranton v. Whyte, 148 Pa. 419; Witman v. Reading, 169 Pa. 375; Scranton v. Jermyn, 156 Pa. 107.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1907:

These several cases were heard at the same time and decided by the court below in one opinion, and we will dispose of them in the same way. The questions raised on the record have been so satisfactorily considered and determined by the trial court that we rest our decision upon its conclusion. The questions have all been substantially passed upon by this court, as will appear by the authorities cited in the opinion of the

court below.   It would serve no good purpose to discuss the
questions at length which have been adjudicated in those cases.

The many assignments of error filed by the property owners
raise substantially the one question, the constitutionality of the
Act of February 23, 1905, P. L. 22, and of the ordinance en-
acted under its authority by the board of township commis-
sioners of Lower Merion township.   In many respects wherein
the constitutionality of the act is attacked, it is almost identi-
cal in language with that part of the Act of May 23, 1889, P. L.
277, relating to sewer construction and assessments in cities
of the third class which has been considered and sustained by
this court, as numerous cases will disclose.

Townships of the first class were created by the Act of April
28, 1899, P. L. 104, and this court sustained the authority of
the legislature in making the classification: Commonwealth v.
Blackley, 198 Pa. 372.   The general assembly may legislate
upon any municipal function relating to that class of town-
ships and it will not offend the constitutional prohibition
against special or local legislation: Reeves v. Traction Co., 152
Pa. 153; The Commonwealth v. Guthrie, 203 Pa. 209.   The
act of 1905, which is attacked in these proceedings, deals with
a subject proper for municipal regulation, and is, therefore,
within the legislative province.   There are, it is true, some
features of the act of 1905 which cannot be sustained, as
pointed out in the opinion of the court below, but they are
not so interwoven with the balance of the act, that they render
the whole statute unconstitutional and void.

The third clause of section 7 of the act of April 28, 1899
conferred upon the board of commissioners the authority to
establish a system of sewers and drainage and to require con-
nection to be made with such sewers; and also made provision
for the construction, maintenance and repair of the sewers in
whole or any part by an equitable assessment upon the prop-
erties benefited, in such manner as might be prescribed by
ordinance.   The Act of May 24, 1901, P. L. 294, amendatory
of this clause of section 7 of the former act, omitted the pro-
vision authorizing the cost of the sewer to be charged on the
property benefited, but conferred power on the township to
enter on private lands for the construction of sewers.   The act
of February 23, 1905 restores the power of the townships to

assess the cost of the sewer on the properties benefited. Legislation, therefore, bearing upon townships of the first class has conferred upon such townships the power and authority of other municipalities in regard to the construction and maintenance of sewers, as well as providing for the expenses necessarily incurred for the purpose. As suggested above, the creation and maintenance of a sewer system for a municipality is clearly a municipal function and hence the legislature may confer authority for the purpose on a class of municipalities without impinging the constitution.

As we have said, the act under consideration is very similar to former legislation on the same subject enacted for cities of the third class. We have ruled that it is within the province of the legislature to authorize the division of the territory of a municipality into sewer districts and provide for alternative methods of assessment. See Oil City v. Oil City Boiler Works, 152 Pa. 348. We think it quite clear that there is a necessity for such division in townships of the first class, much more than in boroughs and in cities. Part of the township may be sparsely settled and needing no system of sewers, while other parts of it may be densely populated, as much so as a borough or city, and needing a system of sewers and drainage. If the legislature can confer authority upon the councils of boroughs and cities to make such divisions, it is quite apparent, we think, that it can confer a like authority upon the commissioners of a first-class township. In the cases before us the court has found that the whole territory in sewer districts Nos. 1 and 2 is devoted to or is ripe for residential purposes, and that the inhabitants enjoy all the comforts of city homes. The properties in these districts were held to be subject to the foot front rule of assessment. On the other hand, the court found that sewer district No. 3 was rural and not thickly populated, and held that it was proper to assess the property in that district according to the benefits derived. The court, therefore, in both instances, followed the well-established rule announced by this court that the foot front rule is applicable to property situated in a city or other densely populated community, and that the rural properties must be assessed according to the benefits derived from the improvement.

The property owners also contend that the legislature could not authorize the commissioners to appoint viewers to ascertain the benefits accruing from the improvement, but the appointment of such viewers must be made by the court. This provision of the act of 1905, however, is sustained by Commonwealth v. Woods, 44 Pa. 113, as well as by later decisions of this court. In the Woods case the court held an act of assembly to be constitutional which authorized the councils of Pittsburg to construct sewers in the streets, and to appoint three viewers to levy and assess the cost upon the property benefited and to make report thereof to the city councils, and provided that the assessment, when approved by the councils, should be a lien on the property assessed. An appropriate ordinance was passed to carry out the provisions of the act of assembly. In delivering the opinion in that case Mr. Justice READ, quoting from Gault's Appeal, 33 Pa. 94, says (p. 100): " States and cities cannot exist without taxation. The time, the mode, and the manner of taxation are committed altogether and exclusively to the legislative discretion." The decisions in that case and in Oil City v. Oil City Boiler Works, 152 Pa. 348 and Winter v. City of Reading, 15 W. N. C. 329, also meet the objection of the property owners that the act should have provided for an appeal from the assessment made by the board of viewers.

It is contended by the property owners that the act offends against article 9, section 1 of the constitution, which provides that all taxation must " be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." That contention, however, is without merit for the reason that we have held time and again that this section of the constitution has no application to assessments for local improvements. In the many decisions on the subject it has uniformly been ruled that this section refers only to such taxes as are of a general nature, and does not apply to such as are levied for local improvements. It is also suggested that the act exceeds the general powers of taxation conferred upon the legislature, and its effect is to confiscate private property, in violation of the restrictions of the declaration of rights. But this position finds nothing to sustain it in the numerous cases of this

court cited by counsel for that purpose. None of those cases decide that the legislature does not have the power to authorize a municipality to construct a necessary sewer system and impose the cost upon the abutting property owners according to the benefits derived from the improvement. That is the extent of the authority conferred by the act of 1905 on the board of commissioners of townships of the first class. It is strictly within the rule established by our decisions, which requires the assessment to be made on the basis that the benefits are local and essentially peculiar to the property assessed and that the limit of the benefits is the limit of the taxing power.

It has been suggested, although there is no argument in support of it in the printed brief, that the statute as applied to Lower Merion township is retroactive, and that as the township had paid for the improvement the legislature could not authorize the commissioners to collect the cost of the sewer off the owners of the property benefited by the improvement. The learned court below has fully answered this contention in the opinion filed. In City of Chester v. Black, 132 Pa. 568, it is said (p. 571) : " The principle has been repeatedly recognized in this state that, where the legislature has antecedent power to authorize a tax, it can cure, by retroactive law, an irregularity or want of authority in levying it, though thereby a right of action which had been vested in an individual should be divested. . . . The constitutionality of this kind of legislation is not open to objection." In Magee v. Commonwealth, 46 Pa. 358, it was held that an act of assembly was constitutional which authorized the city councils of Pittsburg to grade and pave the streets and to collect the cost and expense from the owners of lots abutting thereon, by an equal assessment upon the front foot of each owner, and providing for the appointment of appraisers to value and appraise the paving, the cost of which had been paid or assumed by the city. In that case one of the points for instruction submitted by the defendant, and which this court held was rightly refused, was the following : " That if the jury believe that the city of Pittsburg has paid for the paving for which this suit is brought, and that said payments were made from moneys collected by general taxation, and that the property to be subject to the lien here

was assessed and taxed for said purpose, and that the amount so assessed was paid, the plaintiff cannot recover." In re Beechwood Avenue, 194 Pa. 86 was an appeal by a property owner from the order of the court below confirming a report of viewers appointed to assess damages for improving Beechwood avenue in the city of Pittsburg. One of the exceptions to the report of viewers, filed by appellant and overruled by the court, is as follows: "The cost of said improvement has been provided for by city bonds payable by taxpayers generally, and the present assessment amounts to double taxation, and is unjust, inequitable and illegal." In sustaining the position of the court below Mr. Chief Justice STERRETT said (p. 91): "It is a grave error to assume that the cost of the improvement should be paid out of the proceeds of the loan created by the city for the purpose of enabling it to meet deficiencies that will arise in cases where property fronting on improvements of the same kind will be but slightly benefited, relatively, and the city will be obliged to pay nearly all, or at least a very considerable part, of the costs and expenses of such improvements. In providing the fund referred to, it was never intended by the city to relieve from assessments for 'special benefits' any property fronting on her newly improved streets, avenues or boulevards that may be actually benefited specially, that is, benefited over and above the general benefit accruing to it in common with other property in the vicinity of such improvements." Here the complaining property owners are in error in thinking that the sewer system constructed by the township is a general public improvement and that, therefore, they should not be required to contribute for the benefits they have received from the improvement. The township was divided into sewer districts and the improvements were in those districts, and hence were local to that part of the territory embraced in the whole township. Those districts were the territory accommodated by the improvement and, being local, may be paid for by the abutting property owners.

The learned court below was clearly right in refusing to sustain the legislation in so far as it authorizes the assessment of benefits where the sewer had passed through private lands. In such cases the land is taken, injured or destroyed by virtue of the power of eminent domain, and in the assessment of dam-

ages the owner cannot be deprived of his constitutional right to demand a trial by jury.

We fail to see that the act of 1905 deprives the complaining landowners of any constitutional right. Taxation is a legitimate burden imposed upon the property owner, and he must submit to it when he is not discriminated against in behalf of others similarly situated. If the property owners of townships of the first class believe that the method adopted by the act of 1905 for meeting the expenses incurred in constructing and maintaining sewer systems imposes unjust or unequal taxation, their relief must come from the legislative, and not the judicial, department of the government.

The assignments of error in each of the four appeals are overruled, and the decree in each case is affirmed.