## Nether Providence Township Sewer District Assessment Case.

Argued November 21, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*A. B. Geary,* of *Geary & Rankin,* for appellants.

*J. H. Ward Hinkson,* for appellee.

*Howard M. Lutz,* with him *Arthur L. Reeser,* of *Lutz, Ervin, Reeser & Fronefield,* for intervening appellee.

OPINION BY BALDRIGE, J., January 30, 1941:

This is an appeal by property owners from a decree of the learned court below dismissing certain exceptions to a report of a jury of view filed in a proceeding brought by the first class Township of Nether Providence, Delaware County, to assess benefits resulting from the construction of a sewer.

On April 8, 1937, the township commissioners passed ordinance No. 183, providing for the construction of a sewer system in cooperation with the Works Progress Administration. It was stipulated therein that the properties accommodated or benefited should be assessed for the cost of the construction either by the foot front rule or in proportion to the benefits or both methods as the commissioners might determine; and that the terri-

tory served might, by subsequent ordinance, be divided into sewer districts.

On April 29, 1937, the commissioners passed two ordinances, Nos. 184 and 185. The former designated a portion of the system as sewer district No. 4 and provided that the cost of construction in this district should be assessed upon properties accommodated in proportion to benefits as provided by law. The latter named another portion of the system as sewer district No. 3 and provided that the cost of construction within that district should be assessed by the front foot rule upon the properties benefited.

In October 1937, Townsend B. Young became the owner of approximately 27 acres of land, within district No. 4, lying between Providence Road on the west and Dick's Run on the east. Before the completion of the sewer Young divided his land into 83 lots, only 5 of which abutted on the township sewer line.

Young, desiring to obtain sewage facilities for his property, entered into an agreement with the township on July 15, 1938, in which he agreed to pay the township $2,500, which sum was to be credited on account of any assessment or any other bill for his share of the cost of the construction of the township sewer. He was to pay for sewers built on his own land, and they were to be laid in accordance with the township regulation and under the supervision of its engineers. The agreement further provided that the benefits resulting to Young from the construction of the township sewer should be assessed "as if the said property and the lots and subdivisions thereof, abutted on the said sewers; and [Young] agrees to accept the method of assessment as provided in said Ordinances; and will pay in accordance with the provisions of said Ordinances any assessment or other bill for their proportionate share of the cost of the construction of the said sewers. Bills to be

due and payable under the same terms and conditions as others in said Ordinance provided."

The township agreed to extend its sewer system, and to connect it with the Young sewers. If the amount of the assessment or bill due from Young for his share of the cost of construction of the township sewer should be less than $2,500, then the difference was to be returned to him. He constructed, at his own expense, eight inch sewers in the streets laid out through his tract, and dedicated them to the township as part of its system of sewers.

Viewers were appointed December 23, 1938, to assess the benefits which had accrued to abutting property owners in sewer district No. 4. They found that the increased value of all the properties benefited in that district to be over $100,000, and that the cost chargeable thereto under ordinance No. 213 was $47,007.46. Each property was assessed 39.896% of its increased value. The Young property, which the jury treated as one entire tract, not as 83 separate lots, was assessed $3,-989.60, based on an actual benefit of $10,000.

Exceptions to the report of the jury of view were filed and after argument were dismissed by the learned court below. Hence this appeal.

The chief complaint of the appellants is that under the agreement of July 15, 1938, the lots in the Young property should have been separately assessed, and that the jury should have found that each was benefited to at least the extent of $500. That method would have resulted in an assessment of benefits accruing to the property of approximately four times the amount determined by the jury.

The township and Young, who intervened as appellee, contend that the contract offered in evidence by the property owners was not admissible as the benefits were assessable in the manner provided by law and that it was not within the scope of the viewers' function to

consider the provisions of any contract; that the sole question for consideration by the jury was the cost of the sewer and the benefits assessable against the abutting properties. It is unnecessary to decide the question of whether the agreement was properly made part of the record for if we assume that it was, we are of the opinion that the jury correctly considered the Young property assessable as an entire tract.

It is a prerequisite to assessments of benefits that the property to be charged therefor must *abut* on the sewer. Section 2408 of the First Class Township Code, June 24, 1931, P. L. 1206, Article XXIV, 53 PS §19092-2408, provides for "an assessment upon the several properties abutting on the sewer in proportion to benefits."

If, therefore, the Young property should have been treated as separate lots, only the 5 abutting on the sewer were assessable, the remaining nonabutting lots were not assessable: *Philadelphia v. Nock,* Owner, *Wagner et al.,* Registered Owners, 12 Pa. Superior Ct. 44.

The appellants lay particular stress on that part of the agreement which stipulates that the Youngs shall pay their share of the cost of the sewer "as if the ...... lots ...... abutted on the said sewers." Immediately following however, is the more definite provision that Young agreed to accept the method of assessment and pay therefor as provided in the ordinance. The applicable ordinance, No. 184, provides that the benefits shall be assesssed "as provided by law." The only assessment which Young actually assumed to pay was that made in accordance with the law. Under the law, as observed above, only the land abutting on the sewer was assessable.

The appellants do not complain of the ascertaining of the benefits by the method of fixing the value of the property before and after the improvement, but they assert that if the parties intended to abide by the law,

there would have been no need for the agreement. It was apparently mutually understood that Young was engaged in a real estate development project; that the land would be subdivided, houses built and sold before the sewer was completed. This is shown by the appellants' statement in their argument that upon Young's purchasing the property, which was more than a year before the sewer was completed, he laid "it out into 83 lots with streets, and proceeded to erect houses." Very probably Young wanted the agreement, which was duly recorded, so that those purchasing lots abutting on the sewer before its completion, as that is when the benefits generally accrue *(City of Allegheny v. King,* 18 Pa. Superior Ct. 182; *Philadelphia v. Snedaker,* 69 Pa. Superior Ct. 118), would be ratably liable for assessments subsequently made. Appellants call attention also to the further statement in the agreement in support of their contention that "bills to be due and payable under the same terms and conditions as others in said Ordinance provided." While the agreement made a reference that one time to "bills" in three other places it specifically refers to "assessment or other bill" which Young was to receive for his share of the cost, which seems to indicate that the word "bills" was inadvertently used in this one instance.

We think it is quite plain when this agreement is considered in its entirety that the parties contemplated that the property as a unit, and not each of the lots, all but 5 of which drained into the Young sewers, should be treated as abutting on the township sewer and that the benefits thereto should be determined as provided by law, viz., by considering its value before and after the completion of the improvement. It is highly improbable that Young would voluntarily agree to pay the high assessment that necessarily would have resulted and which was not imposed upon him by the law, if every lot was assessable. The construction we

place upon the agreement is in harmony with the conclusion reached by the learned court below as expressed in its opinion, in which we fully concur.

The appellants contend further that the township does not have authority to establish separate sewer districts by subsequent ordinances for the sole purpose of adopting two different methods of assessment, but cite no authority in support thereof. That question was not properly before a jury of view, as it was not within their authority to construe an act of the legislature. If a further argument is needed in answer to that contention it is found in the First Class Township Code, supra. Section 2407, 53 PS §19092-2407, specifically provides that commissioners of the township may constitute the district accommodated by a sewer a single district or may divide it into several districts: *Anderson v. Lower Merion Township,* 217 Pa. 369, 66 A. 1115. Section 2408, 53 PS §19092-2408, provides that when a township is thus divided into sewer districts, assessments may be made on the foot front rule to property situated in a city or other densely populated community, and rural properties may be assessed according to the benefits derived from the improvements.

The lower court below in this connection said: "Since it is apparent that the properties therein [Sewer District No. 4] vary greatly as to size, depth and the nature of the improvements thereon, we hold that this district is more rural than urban and that the proper method of assessment was used. The fact that the foot front method was in Sewer District No. 3, to which no exceptions were filed, does not mean that it must also be used in Sewer District No. 4."

Judgment affirmed.