## Upper Merion Township v. Stewart

504

*William Heuser*, for plaintiffs.

*Anthony Differ*, for defendants.

SMILLIE, J., March 3, 1967.—The case herein arises on plaintiff's motion for a new trial after a verdict for defendants in a trial before a judge without a jury.

The facts disclose that in October, 1960, the Pennsylvania Department of Highways notified Upper Merion Township that Henderson Road, a State highway in the township, would be reconstructed and widened from U. S. route 202 to Brownlie Road. The highway department told the township board of supervisors that it would construct and pay for a 32-foot cartway along Henderson Road, if no curbs were installed, and a 40-foot cartway with curbs if the township would pay for the curbing along said road. The highway department's contractor would install the curbs.

On October 25, 1960, the Upper Merion Township Board of Supervisors advised the Department of Highways they did not want the 40-foot cartway with the additional cost of the curbing a l o n g Henderson Road, but later, on December 30, 1960, the supervisors changed their mind and informed the Highway Department that they wanted the 40-foot cartway and they would pay for the curbing. The cardinal reason for the change was that in addition to being a State highway, the township considered Henderson Road as the major cross-township highway. In fact, it is the only road that crosses the entire township.

On July 9, 1962, the board of supervisors enacted ordinance no. 115, providing for the installation of curbs along Henderson Road with an assessment against the abutting property owners at a front footage rate, pursuant to the Act of May 1, 1933, P. L. 103, sec. 1402(b), 53 PS §66402(b), as amended.

Township Supervisor Blaine W. Scott testified that the property owners abutting Henderson Road were to be assessed for the curbs because the township did not provide for the improvement in their budget.

Subsequently, the highway was widened and the curbs were installed along the rear of defendants' property on Henderson Road, and defendants were assessed $187.50 for their share of the curbing. They paid the money under protest and, on July 19, 1965, the complaint in assumpsit was filed and the trial held.

In the instant case, all of the witnesses who testified at trial were of the opinion that the property of defendant was not benefited by the curbs on the rear of the property. In fact, two of Upper Merion Township's supervisors testified there was no special benefit to defendants' property. Said Supervisor Blaine W. Scott:

"A. Honestly, I can't see where a person in this position is benefited".

Former Supervisor William F. Ross testified:

"Q. On the basis of these things, did you express your opinion to the other Supervisors that this property was not benefited?

"A. Yes, I did.

"Q. Is this still your opinion today?

"A. This is still my opinion".

Three real estate appraisers who had many years' experience with property values in Upper Merion were likewise of the unanimous opinion that defendants' property was not benefited by the curbs installed to the rear of their property. The only benefit of the widening of Henderson Road and the installation of curbs

was a general public benefit to Upper Merion Township in easing travel on its main arterial highway. Defendants do not even have access to that highway from their property.

The motions for a new trial assign nine errors, but plaintiff confined both brief and oral argument to two questions of law.

The first issue is whether defendants may be assessed for the curbs installed on the rear of their property without any showing of special benefit to their property; the second question is whether or not the township's ordinance was enacted under the proper enabling legislation.

We will discuss the second issue raised first, because it is not controlling.

The question raised in briefs and at oral argument is whether plaintiff's ordinance no. 115 was enacted under the correct enabling legislation. Although we believe that plaintiff cited and proceeded on the wrong statute in the body of its ordinance, yet plaintiff would be entitled to cure the irregularity. In Hinaman v. Vandergrift, 197 Pa. Superior Ct. 140, at page 144, Judge Watkins, citing from City of Chester v. Black, 132 Pa. 568 (1890), said:

" 'The principle has been repeatedly recognized in this state that, where the legislature has antecedent power to authorize a tax, it can cure, by a retroactive law, an irregularity or want of authority in levying it, though thereby a right of action which had been vested in an individual should be divested' ".

If there were a benefit to the property, Upper Merion Township would have the authority to assess for the curbing, and the mere incorrect citation of the enabling act would not vitiate that right as it could be cured.

We are treating the issue summarily because it is unnecessary to decide that contention; because the

case rests upon the question of special benefits to defendants' property. If it be determined that benefits must be had regardless of whether or not the statute says "benefits", the irregularity in the ordinance is of no concern.

The important issue raised is the question of benefits to the abutting owners of the improvement. The case rises or falls on the legal determination of that proposition.

The Act of May 1, 1933, P. L. 103, sec. 1402(b), as amended, 53 PS §66402(b), in The Second Class Township Code, which was the enabling legislation used by the township in enacting ordinance no. 115, provides:

"(b) The township supervisors may also construct sidewalks and curbs of suitable material along the roads or highways in such townships pursuant to an ordinance authorizing such construction. . . . Whenever any sidewalks or curbs are constructed by the supervisors pursuant to such ordinance, the expense of the construction of such sidewalks or curbs shall be paid by the abutting property owners in proportion to their frontage, but in no such instance shall any abutting property owner be liable for the construction of such sidewalk in an amount greater than ten percent, nor for the construction of such curb in an amount greater than ten percent, of the assessed valuation of the abutting property owned by him. Any expense above such maximum liability of abutting property owners shall be paid by the townships. If abutting property owners fail to so pay the expenses of the construction of such sidewalks or curbs for which they are liable, the township supervisors may recover the amount by action of assumpsit or may file municipal liens therefor against the abutting properties in the manner provided by law for the filing and collection of municipal liens".

The statute does not mention or require a showing

of a special benefit to the assessed property. Plaintiff contends that since the statute says nothing about benefits defendant may be assessed for the curbing notwithstanding that at trial, it was unequivocably demonstrated that his property was not benefited by the curbing, but suffered a detriment due to the increased truck traffic along Henderson Road.

In Washington Avenue, 69 Pa. 352 (1871), the Supreme Court defined special benefits as:

" [T]he superadded value of the property, caused by the local improvement of which this property has a peculiar advantage beyond that of others not in like circumstances".

Plaintiff relies on Michener v. City of Philadelphia, 118 Pa. 535 (1888), to establish that the question of special benefit to defendants' property is immaterial.

In the Michener case, the city constructed three sewers on plaintiff's property fronting on Broad and Oxford Streets and running to Carlisle Street. The first two sewers abutted Broad Street and Carlisle Street, and plaintiff paid the assessment but refused to pay for the third sewer on the Oxford Street frontage. He contended there was no benefit to his property. Neither the enabling legislation nor the city ordinance enacted thereunder mentioned benefits. In upholding the municipal lien, Mr. Justice Paxson said:

"The plaintiff alleges, however, that his property is not benefited by the sewer. *He may or may not be mistaken in this.* We cannot say. But this is a species of taxation, and all taxation is presumed to be for the benefit, directly or indirectly, of the taxpayer or his property. Laid as taxes are, under general laws, there will always be cases of apparent individual hardship. . . . And it would be intolerable if in every instance of special taxation the question of benefits could be thrown into the jury-box. It would introduce into municipal government a novel and dangerous feature.

It would substitute for the responsibility of councils, limited though it be, the wholly irresponsible and uncertain action of jurors. It is better 'to endure the ills we have, than to fly to those we know not of' ". (Italics supplied).

The court, in upholding the municipal lien, had to distinguish Hammett v. Philadelphia, 65 Pa. 146 (1870), where Mr. Justice Sharswood said, in striking a municipal lien:

"Local assessments can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be so imposed when the improvement is either expressed, or appears to be for general public benefit".

The assessment in the Hammett case was for the repaving of Broad Street and plaintiff's property, which fronted on Broad Street, was assessed under a statute that, like the statute in the Michener case, supra, and the one in the case at bar, made no mention of benefit to the abutting property owner.

Said Mr. Justice Paxson, in attempting to distinguish the Hammett decision by so eminent a jurist as Justice Sharswood:

"Hammett v. The City appears to have been misunderstood to some extent. At least it is frequently cited as covering a much broader view than its facts and the decision thereon warrant. That was a case of re-paving Broad Street. It was held that the original paving of a street is a local improvement and is within the principle of assessing the cost on the lots lying on it. But Broad Street had been paved before, and the cost thereof assessed upon and paid by the property owners. A subsequent act of assembly required the city to occupy the street 'for its entire length for the uses and purposes of a public drive, carriage way, street, or avenue, or portions thereof, in whole or in part . . .

with such mode of pavement,' etc., as might in the judgment of the city councils be best adapted for the uses aforesaid, and ordained that the 'cost of said improvements be paid for by the owners of property abutting on said street.' In other words, the owners of property on Broad Street were directed by an act of assembly and by city councils acting in pursuance thereof, to take up the pavement which they had paid for, and lay down a new and expensive one, not for the benefit of their property, but to provide a grand drive or boulevard for the public generally. This sufficiently appears by the following extract from the opinion of our late brother Sharswood: 'The object of this improvement is not to bring or keep Broad Street, as all the other streets within the built-up portions of the city are kept, for the advantage and comfort of those who live upon it, and for ordinary business and travel, but to make a great public drive—a pleasure ground—along which elegant equipages may disport of an afternoon' ''.

Mr. Justice Paxson thus said the assessment statute in the Hammett case, supra, *demonstrated on its face* that there could not *possibly* be a special benefit to the adjoining property owners, but only a general public benefit, because the wording of the statute required the city to occupy Broad Street "for its entire length for the uses and purposes of a public drive. . . . "

On the other hand, the sewer assessment statute in the Michener case, supra, was *indecisive on its face* as to special benefits, and the court said it would not throw *every doubtful* case to a finder of fact and would not look behind the statute at each individual situation to ascertain if a special benefit flowed to the abutting property owners. Justice Paxson said in Michener, supra, that there was doubt about benefit, as follows:

"The plaintiff alleges, however, that his property is not benefited by the sewer. *He may or may not be*

*mistaken in this.* We cannot say". (Italics supplied).

Such an analysis of Mr. Justice Paxson's reasoning is further justified by his later opinion as chief justice in Allegheny City v. West Penna. R. Co., 138 Pa. 375 (1890), where he stated:

*"The constitutionality of assessments for street improvements can be sustained only upon the ground that the property assessed is benefited by the improvement. This is the doctrine of all the authorities. It is sufficient to refer to Hammett v. Philadelphia, 65 Pa. 150.*

"It is true, as a general rule, the property-owner cannot defend on the ground that his property is not benefited by the improvement: Michener v. Philadelphia, 118 Pa. 535; Commonwealth v. Woods, 44 Pa. 113. These cases, however, and the reasoning by which they are supported, have no application to the roadbed of a railroad company. *This is the one species of property* which it is conceded can derive no possible benefit *from street improvements.* As was said in Philadelphia v. Railroad Co., supra, 'A railroad cannot, from its very nature, derive any benefit from the paving, while all the rest of the neighborhood may.' The owner of an ordinary lot of ground, whether such owner be an individual or a railroad corporation, cannot be heard to defend against a municipal assessment for paving, for the reason that the law presumes such property is benefited. But, in the case of the roadbed of a railroad, the presumption of law is the other way. It is the same at all times and under all circumstances; hence, the law declares the absence of benefits". (Italics supplied).

As in the Hammett case, supra, it was evident to the court that the street improvements could not possibly be of a special benefit to plaintiff, and the court did not have to look at the individual factual situation to so ascertain.

While the assessment statute in the case at bar is analogous to the one in the Michener case, supra, because it is indecisive as to benefits flowing to defendant's property, if it be interpreted as allowing an assessment without the necessity of a special benefit, the statute would be unconstitutional as a confiscation of property, because, as Judge Hirt said in Spring Garden Township v. Logan, 149 Pa. Superior Ct. 580 (1942), citing from Harrisburg v. McPherran, 14 Pa. Superior Ct. 473 (1900):

" 'It is undisputed that the legislature may, in the exercise of the power of taxation, authorize municipal corporations to assess the cost of such improvement upon abutting properties, but their power is not without limitations. It has been held repeatedly by our Supreme Court that such assessments are sustainable only on the basis of special benefit, and the limit of the benefit is the limit of the taxing power. When this limit is exceeded, the assessment is not taxation, but confiscation, and, in many instances, such assessments have been declared invalid because this principle was violated' ".

The key to the Michener decision and the reason for that court's reluctance to look behind the face of assessment statutes was because in 1870, assumpsit actions with jury trials were not permitted in contesting assessments. As Mr. Justice Paxson said:

". . . And it would be intolerable if in every instance of special taxation the question of benefits could be thrown into the jury-box".

The limited procedure at that date for contesting an assessment was for the city to file a lien, followed by the assessed property owner filing an affidavit of defense and then, on motion for a judgment for want of a sufficient affidavit of defense, the trial judge would be compelled to decide the case on the pleadings.

In the case at bar, the procedure for contesting

assessments allows for actions in assumpsit and for determination of the question of benefits at a trial by a jury.

As Mr. Justice Paxson himself said, in distinguishing his convenient ruling in Michener, supra, to avoid Justice Sharswood's emphatic decision in Hammett:

"Hammett v. The City *appears* to have been misunderstood to some extent. At least it is frequently cited as covering a much broader view than its facts and the decision thereon warrant". (Italics supplied).

The same may be said more emphatically regarding Michener, supra, which, apparently, Justice Paxson thought when he decided Allegheny City v. West Penna. R. Co., supra. We do not believe the fact that a railroad was involved had anything to do with the distinction of basic legal principle concerning the constitutional necessity for special benefits to be shown to validate an assessment.

Although the Michener case, supra, has never been expressly overruled, it has also never been followed on the benefit issue. The Supreme Court has said many times since Michener that an assessment without a special benefit to the property owner is invalid. Michener is a rock in the stream of equity, justice and legal precedent that apparently arose out of a problem of case disposal. The constitutionality question raised point blank by Hammett, supra, and by every case *since* Michener, supra, has never been questioned, avoided, disputed or denied. In Philadelphia v. United States Housing Corporation, 280 Pa. 417 (1924), at page 422, the court said:

"It is true that general taxation and these local assessments have their basis in the taxing power, but there the similarity ends. Payment of the former results in no return to the treasury; while, in nearly every instance, all that is expended for the latter, and, not infrequently, much more, comes back when the

property is sold. The former had no basis in contract and is limited only by the necessities of the government; the latter is *quasi-contractual and is expressly limited to the benefits accruing to the property affected*". (Italics supplied).

See also Manheim Township Supervisors v. Workman, 350 Pa. 168 (1944).

It was clearly demonstrated at trial that there was no special benefit to defendant's property. Therefore, even though the assessment statute in the case at bar makes no mention of special benefits to the property owner, the lack of a special benefit to him renders the assessment invalid.

ORDER

And now, March 3, 1967, after argument before the court en banc consisting of Robert W. Honeyman, J., Frederick B. Smillie, J., and William W. Vogel, J., plaintiff's motion for a new trial and supplemental motion for a new trial are denied.